UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CONNIE BASCO, in her individual capacity and as Personal Representative of the Estate of STAR SHELLS, deceased, et al. | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-23-1143-G |
| THE CITY OF OKLAHOMA CITY, a municipal corporation, | ) ) ) ) | |
| Defendant. | ) | |

## **ORDER**

Plaintiffs Connie Basco, in her individual capacity and as Personal Representative of the Estate of Star Shells, and Elijah Reeves, in his individual capacity and as Personal Representative of the Estate of Elijah Reeves III, assert claims against Defendant The City of Oklahoma City under federal and state law. *See* Am. Compl. (Doc. No. 20). Now before the Court is Defendant's partial Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 21), to which Plaintiffs have responded (Doc. No. 26).

I.   *Summary of the Pleadings*

Plaintiffs' claims arise from the death of Star Shells and her unborn child on May 24, 2021, in Oklahoma City, Oklahoma. Plaintiff Basco is the late Ms. Shells' mother, and Plaintiff Reeves is the father of the late Elijah Reeves III ("Elijah"). *See* Am. Compl. ¶¶ 2, 6-7.

Plaintiffs allege that at 7:30 a.m. on Monday, May 24, 2021, Oklahoma City Police Department ("OCPD") Officer Jon Hawkins was dispatched to 2507 South Central Avenue in Oklahoma City in reference to a larceny of a motor vehicle, which was reported stolen by its owner, Gerald Ochoa. *See id.* ¶¶ 18, 19, 29, 30. Mr. Ochoa stated to Officer Hawkins that he had heard his F-350 pickup truck (the "Truck") be driven away from his shop. *Id.* ¶ 20.

In an incident report, Officer Hawkins reported that Mr. Ochoa, using GPS, "was able to track the vehicle on his telephone." *Id.* ¶¶ 21, 22. Officer Hawkins also reported, "I . . . was able to give real time updates of the vehicle location," which were "relayed to Dispatch and to officers in the area." *Id.* ¶ 21.

The Truck was tracked to the area of Northeast 30th Street and Lincoln Boulevard. *Id.* ¶ 23. OCPD officers were dispatched to the scene, but when they attempted to stop the Truck, the Truck "accelerated rapidly away from officers initiating a pursuit when they engaged their emergency lights." *Id.* ¶¶ 24, 32-34. The officers pursued the Truck, often at over 85 miles per hour and reaching speeds as high as 96 miles per hour. *See id.* ¶¶ 25-26, 35-42, 44. The Truck crossed intersections against red lights as the officers continued pursuit. *See id.* ¶¶ 25-26, 38-40, 42. The driver of the Truck took evasive actions as it approached the high-traffic area of Northeast 50th Street and Lincoln Boulevard. *Id.* ¶¶ 39-41. The pursuing OCPD officers approached this area at speeds between 70 and 85 miles per hour. *See id.* ¶ 41.

At 8:05 a.m., "pursuing officers advise[d] that they are going '94 MPH.'" *Id.* ¶ 42. "The suspect slow[ed] to 60 mph as he r[an] the third reported red light" at Northeast 23rd

2

Street and Martin Luther King Avenue.  *Id.*  Running a fourth red light, the Truck at 8:06 a.m. collided with the vehicle being driven by Ms. Shells.  *See id.* ¶¶ 2, 4, 43-45; *see also id.* ¶ 26 ("The stolen F-350 continued south . . . until it collided with a white Chevrolet Impala driven by [Ms. Shells] that was eastbound on N.E. 16th with a green light.").

Ms. Shells died on the scene from injuries sustained in the collision.  *Id.* ¶ 27.  Ms. Shells was approximately six months pregnant with Elijah, who also died as a result of the collision.  *Id.* ¶ 28.

Plaintiffs allege that the OCPD officers' conduct "caused the driver of the stolen vehicle to drive recklessly at high rates of speed, and strike the vehicle of [Ms. Shells], causing her death and the death of her unborn child."  *Id.* ¶ 4.  Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 against Defendant City for violation of their substantive due process rights and equal protection rights under the Fourteenth Amendment.  *See id.* ¶¶ 1, 58, 63-66.[1]  Plaintiffs additionally seek relief under Oklahoma law on a theory of negligence.  *See id.* ¶¶ 78-83.

II.    *Standard of Decision*

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  "[T]o withstand a Rule

---

[1] The Amended Complaint also cites the Fifth Amendment in connection with the due process claim.  As no federal officials are alleged to be involved, however, the due process challenge implicates rights guaranteed by the Fourteenth Amendment.  *See Parnisi v. Colo. State Hosp.*, No. 92-1368, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993).

12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192.

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III. Discussion

    A. *Elements of a Claim Under 42 U.S.C. § 1983*

In its Motion, Defendant concedes that Plaintiffs have adequately pleaded a state-law negligence cause of action but seeks dismissal of the federal claims raised pursuant to 42 U.S.C. § 1983. *See* Def.'s Mot. at 6. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States" and "must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Defendant does not dispute that it was acting under color of state law in connection with Plaintiffs' assertions regarding the

4

collision on May 24, 2021. Defendant's argument instead challenges Plaintiffs' ability to show that Defendant "subject[ed]" Plaintiffs, "or cause[d] [Plaintiffs] to be subjected," "to a deprivation of [their] lawful rights." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted).

### B. Municipal Liability Under 42 U.S.C. § 1983

More specifically, Defendant argues that Plaintiffs have not alleged that liability for such Fourteenth Amendment violations would lie against Defendant as a municipal entity under 42 U.S.C. § 1983. "A municipality may not be held liable under § 1983 solely because its employee inflicted injury[.]" *Burke v. Glanz*, 292 F. Supp. 3d 1235, 1249 (N.D. Okla. 2017). Rather, to hold the City of Oklahoma City liable under § 1983 for a deprivation of Plaintiffs' federally protected rights, Plaintiffs must: (1) identify "the existence of a municipal policy or custom by which [Plaintiffs] [were] denied a constitutional right"; and (2) demonstrate "that the policy or custom was the moving force behind the constitutional deprivation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)).

Defendant argues that the first requirement is not met because the allegations do not show that Plaintiffs' injuries were the result of a relevant "policy or custom" that can be attributed to Defendant. *See* Def.'s Mot. at 1, 3-6, 9-10.[2] "The 'official policy'

---

[2] To any extent Defendant additionally seeks dismissal due to a failure to plausibly plead a substantive due process or equal protection violation, the Motion does not connect its discussion of negligence and violation of the Fourth Amendment to Plaintiffs' Fourteenth Amendment claims, or address the pleading requirements for either of those claims, and therefore does not show an entitlement to dismissal under Rule 12(b)(6).

requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis omitted). The Tenth Circuit has explained:

> Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal "custom" so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law. Municipal liability may . . . also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) (alteration, citations, and internal quotation marks omitted). In sum, "[a] challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

Plaintiffs argue that their claims are premised on Defendant City's formal policies and/or informal customs. *See* Pls.' Resp. at 4-7. Specifically, Plaintiffs point to the Amended Complaint's allegation that Defendant "is responsible for the operation of the

6

[OCPD] and its law enforcement officers" and "has the authority to . . . delegate to the police chief final policy and decision-making authority regarding law enforcement matters for the City of Oklahoma City." Am. Compl. ¶ 8. Plaintiffs also point to the allegation that the May 24, 2021 police chase was initiated by the OCPD in coordination with instructions from dispatch and conducted with the observation and monitoring of OCPD Lieutenant Anthony Riley, "who upon information and belief had the discretion and obligation to immediately terminate the pursuit if it became too dangerous." *Id.* ¶¶ 23-25, 29-35, 38, 42.

Plaintiffs further allege that at the time of the collision Defendant had an "inadequate" policy in place as to "how it conducted its police chases," as well as "policies, procedures and customs [that] permitted and encouraged officers to drive in a reckless and wanton manner without consequences." *Id.* ¶¶ 66-67, 75. And Plaintiffs allege that Defendant was aware of "the foreseeable consequences of employing officers who believed they could get in wrecks without repercussion." *Id.* ¶ 76.

One year after the incident, the OCPD adopted a more restrictive vehicle-pursuit policy, which "replaced the outdated policies of the [OCPD]." *Id.* ¶¶ 48-51. On August 4, 2022, The Oklahoman newspaper reported that OCPD Police Chief Wade Gourley had issued the "policy change" and "revisions" "with the goal of reducing harm to bystanders and property." *Id.* ¶ 52. The article reported that in a May 31, 2022 email, Chief Gourley stated, "In 2021, the [OCPD] recognized a need to reevaluate directives governing the operation of police vehicles, particularly those addressing pursuits." *Id.*

Accepted as true, these allegations offer sufficient facts to allow a "reasonable

7

inference that [Defendant] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court concludes that Plaintiffs' allegations reasonably reflect that Defendant had in place a "formal regulation or policy statement," and/or an informal custom "amount[ing] to a widespread practice," by which Plaintiffs were denied their rights to due process and equal protection. *Brammer-Hoelter*, 602 F.3d at 1189 (internal quotation marks omitted). Plaintiffs "raise a right to relief above the speculative level," and the claims are not subject to dismissal at this early pleading stage. *Twombly*, 550 U.S. at 555.[3]

## CONCLUSION

As outlined herein, Defendant's Motion to Dismiss (Doc. No. 21) is DENIED.

The stay previously imposed by the Court (Doc. No. 30) is hereby LIFTED and VACATED. A revised scheduling order will be separately entered.

IT IS SO ORDERED this 25th day of March, 2025.

_____
CHARLES B. GOODWIN
United States District Judge

---

[3] Based upon this conclusion, the Court need not reach Plaintiffs' alternative arguments that they could hold Defendant liable on the basis of deliberately indifferent training and supervision or under a danger-creation theory of liability. *See* Pls.' Resp. at 8-13.